UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE SCHWARTZMAN,<br><br>              Plaintiff,<br><br>    vs.<br><br>MELVIN COOPER,<br><br>              Defendant. | Case No.  24-9254<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Julie Schwartzman ("Plaintiff"), by her attorneys, Reitler Kailas & Rosenblatt LLP, as and for her Complaint against Defendant Melvin Cooper ("Defendant") herein, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action pursuant to 17 U.S.C. § 101 *et seq.* in order to (A) enjoin the infringement of her copyright in a literary work (the "Book") and the graphic design and cover illustration for the Book ("Design"), and (B) obtain monetary relief to the maximum extent permitted by law for Defendant's infringement of the Book and the Design (collectively, the "Works").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1338 because the claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*

3. Venue lies within this judicial district pursuant to 28 U.S.C. §1400(a) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and because Defendant has engaged in exploitation of the Work in this judicial district.

1

## PARTIES

4.  Plaintiff Julie Schwartzman is a resident of the State of New York and a professional author and graphic designer.

5.  Defendant Melvin Cooper is a resident of the State of New York and a self-described former "loanshark" and convicted felon.

## PLAINTIFF'S CREATION OF THE WORKS

6.  In 2002, Defendant engaged the services of Plaintiff to write a non-fiction literary work based on his exploits as a "loanshark" in New York's criminal underworld.

7.  No written agreement was ever executed between the parties.

8.  The parties orally agreed that Plaintiff would be paid a fixed fee and a royalty based on sales of the finished work.

9.  The parties also orally agreed that Defendant would own the copyright in Plaintiff's work, but the parties never executed a written agreement assigning copyright in such work to Defendant.

10. The parties also orally agreed that Defendant would provide Plaintiff with documentation and supporting materials to assist in her authorship of the work.

11. Plaintiff delivered a draft version of the work ("Draft") to Defendant in 2003.

12. Defendant paid Plaintiff the agreed-upon fixed fee.

13. The Draft was not a work made for hire as defined by the U.S. Copyright Act because there was no signed writing between the parties, and because Plaintiff was not an "employee" of Defendant.

14. Plaintiff created the Draft on her own schedule.

15. Plaintiff created the Draft using her own computers and other equipment.

16. Plaintiff created the Draft in locations of her own choosing.

17. Plaintiff made all creative and expressive choices in the Draft.

18. Defendant provided no employee benefits to Plaintiffs in connection with her authorship of the Draft.

19. Defendant did not withhold taxes from the payment made to Plaintiff, and did not issue a Form W-2 Wage and Tax Statement to Plaintiff.

20. Plaintiff's creation of the Draft required extensive skill, judgment, and creativity.

21. Defendant did not have the right to assign other tasks to Plaintiff and did not assign any such other tasks.

22. Defendant did not provide direction or creative input.

23. During Plaintiff's creation of the Draft, she was free to work on other projects for other hiring parties, and she did so.

24. At no relevant time was Defendant in the business of writing or publishing books.

25. In January 2023 the parties agreed that the Draft was not as good as it could have been, in part because Defendant did not provide Plaintiff with all the documentation and supporting material he had promised to provide, and in part because Defendant did not provide any information, written or oral, on central aspects of the story and principal characters.

26. The parties orally agreed in January of 2023 that Plaintiff would research and write a new work, on terms to be determined later.

27. Plaintiff agreed to bear all costs for this effort.

28. Between 2005 and 2008, the parties orally agreed on terms for a division of royalties, but this agreement was never committed to writing.

29. Over the next twenty years, despite the lack of any oral or written agreement with Defendant, Plaintiff spent hundreds of hours researching databases and archives, interviewing numerous individuals central to the story, and writing and editing the Book, all at her own expense, including travel and the hiring of two professional editors.

30. Plaintiff created a 100-page proposal for use in the sale of the Book.

31. Plaintiff was the sole author of the Book, including the Design and all text, both before and after the delivery of the Draft in 2003.

32. Plaintiff incorporated significant portions of the unpublished Draft – of which she was the sole author – into the Book.

33. Plaintiff and Defendant orally agreed to self-publish the Book in late 2023.

34. At her own sole expense, Plaintiff produced a prototype of the Book for purposes of publication, including creating the Design, illustration, copyrighting, typesetting and production.

35. Plaintiff gave copies of this prototype to Defendant for his review in November 2023.

36. Plaintiff also created the Book's title, "Wiseguys, Rabbis, and the FBI."

37. In November 2024, Plaintiff applied to register copyright in the Design under her own name as sole claimant, which application is currently pending under case number 1-1447332352.

38. When the Copyright Office issues a registration for the Design, Applicant intends to amend this Complaint to add an infringement allegation with respect to the Design.

39. At no time during the creation of the Draft, the Book or the Design did Plaintiff execute a written transfer of her rights in those Works to Defendant or to any other person or entity.

40. Plaintiff remained in contact with Defendant during her creation of the Works.

41. In January of 2024 Defendant said he wanted an outside party to assist in the self-publishing effort. Plaintiff agreed and sought "hybrid" or co-publishers and notified Defendant in or about February 2024 that she had found a co-publisher for the Works to assist in their efforts to publish.

42. Both Plaintiff and Defendant orally agreed to go forward with the co-publisher.

43. In March 2024, the co-publisher provided a copy of a written agreement to Plaintiff and Defendant.

44. The Works were scheduled to be published in late Spring 2024.

45. Upon information and belief, Defendant never signed the co-publishing agreement.

## DEFENDANT'S INFRINGING ACTS

46. On or about July 23, 2024, shortly before Plaintiff's planned publication of the Works with the agreement of Defendant, while waiting to finalize agreements with Defendant, Plaintiff learned that the Works were being sold on Amazon.com in the form of a book ("Infringing Work") bearing the title Plaintiff created, "Wiseguys, Rabbis and the FBI," which featured the Design on the cover and contained the entire verbatim text of the unpublished Draft and the Book.

47. Upon information and belief, the Infringing Work was first offered for sale through Amazon.com on or about July 2, 2024.

48. At no time were the publication and sale of the Infringing Work authorized by Plaintiff.

49. Defendant is prominently credited as the author of the Infringing Book.

50. Plaintiff's name does not appear on the cover of the Infringing Book or anywhere else.

51. Upon discovering the Infringing Book, Plaintiff's counsel contacted Defendant's counsel on July 23, 2024 and demanded that Defendant cease and desist from any exploitation of the Infringing Book through Amazon.com or by any other means, that Defendant recall and destroy all physical copies of the Infringing Book, and that Defendant provide a complete accounting of all copies of the Infringing Book made and exploited by Defendant, and of all revenue generated by such exploitation.

52. Defendant refused to discontinue sales of the Infringing Book, or to compensate Plaintiff in any way for his unauthorized use of her copyrights in the Works.

53. The publisher that Plaintiff had secured to publish the Works could not proceed because of Defendant's publication of the Infringing Book.

## COUNT ONE – COPYRIGHT INFRINGEMENT

54. Plaintiff repeats and realleges paragraphs 1-53 above as if fully set forth.

55. Plaintiff is the sole author and owner of copyright in the Works.

56. The Draft is registered in the U.S. Copyright Office under Reg. No. TXu001160159.

57. Defendant's unauthorized copying of the Works, and subsequent reproduction and public distribution of the Infringing Book, are infringements of Plaintiff's copyright in the Works in violation of the Copyright Act, 17 U.S.C. § 106.

58. As a direct and proximate result of the foregoing acts of the Defendant, the Plaintiff has been damaged in an amount to be proved at trial.

59. Defendant's aforesaid conduct has infringed and will continue to infringe Plaintiff's valuable rights in the Works unless enjoined by this Court.

60. Defendant's aforesaid conduct is and has at all relevant times been willful.

61.     Plaintiff has no adequate remedy at law.

**WHEREFORE**, the Plaintiff requests the following relief:

A.     Actual damages and Defendant's profits in an amount to be proved at trial, or, in the alternative, statutory damages in the amount of $150,000 for each of Plaintiff's registered works willfully infringed by Defendant, as permitted by applicable law;

B.     Preliminary and permanent injunctive relief requiring the Defendant to cease and desist from reproducing, distributing, and/or otherwise exploiting the Infringing Book;

C.     An award of the costs of bringing this action, including reasonable attorneys' fees, to the extent permitted by applicable law.

D.     Such other and further relief as this Court deems just and proper.

Dated: December 4, 2024

Respectfully submitted,

REITLER KAILAS & ROSENBLATT, LLP

By: _s/ Brian D. Caplan_
Brian D. Caplan
Robert W. Clarida
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 209-3050
Facsimile: (212) 371-5500
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com
*Attorneys for Plaintiff*